So, Mr. Nutter, you've reserved two minutes for rebuttal. Yes. Thank you, Judge Sullivan. Good morning, Your Honors. May it please the Court, my name is Daniel Nutter. I represent Mr. Derek Jones. Mr. Jones committed fraud. And he clearly accepted responsibility for that fraud. Well, maybe not so clear. I mean, he pled guilty. Acceptance of responsibility is sort of a different thing, right? Well, he pleaded guilty. Probation agreed that he clearly accepted responsibility. The government itself, in its May 26, 2022 memorandum, agrees that my client accepted responsibility. And the only bases that the district court stated for not giving him acceptance of responsibility contradict both the records and her own finding. There were two such bases. The court said, well, he claimed actual innocence, which the court itself admitted at the motion to withdraw. He did not claim actual innocence. The government, on page 18 of the red brief, says Mr. Jones did not plead actual innocence. No one thinks that he actually pleaded actual innocence. That would defeat acceptance of responsibility under the Negron case. But you don't get acceptance. If you plead to technical guilt but deny basically 90% of the offense, the court doesn't have to say, oh, well, that's acceptance of responsibility. You don't have to claim actual innocence to be denied acceptance of responsibility. Do you agree? Well, first, I would disagree that he denied 90% of the offense. I think the questions of how much was being denied or not was- The narrow portion of the alleged scheme that he was not guilty of the overbroad and all-inclusive scheme that the government had accused him of participating in. Well, he did. I think if you look at the indictment, it's a melange of a variety of different claims. It's not even a single scheme. And that's what's so confusing for- That's a different issue. That may be, then, that there are problems with the loss amount. There are problems with the government's theory of the case. But in terms of his acceptance, what the district court found was that he basically pled to the elements of the offense but denied the scope of activity that the district court found to have been proven. But that's exactly what the guidelines say does not defeat acceptance of responsibility unless it's false or frivolous. And there were no findings on that. And that is Guidelines 3.1.1. It's Application Note 1A to the guidelines there. And it says, unless you have a false or frivolous objection, merely objecting to the scope, if you have a good faith basis. And he did have a good faith basis. He had the Renaissance Associates report. He had these statements by some of the investors, including Brad Good, coming up there saying realized ventures is doing legitimate work. He has legitimate basis in the law. He has regent office supply. Some of the arguments that the government is saying is that he committed fraud by stating the wrong address for his business. Well, he manipulated a bank statement to show that it had a balance of $7 million when, in fact, it had a negative balance. Well, that was for one item with one investor. But there are 54 investors. And what my client is saying is that there are 27 investors for whom there hasn't been any material provided in discovery or anything else linking my client to a material misrepresentation. And that's what Stanley is about. Stanley says you actually need to show that an investor is associated with a material misrepresentation. And that's what my client is saying. He's saying, okay, he's not denying that he committed a fraud. He's not standing on ceremony. He has a reasonable expectation, both from the law and from what his attorney told him, that he can plead guilty. And the precise scope of the fraud with this really strange indictment, which is, again, it's all over the place. This is not like a single scheme in the way that you think of a scheme, certainly not in the schemes that you look at in Regas, in Bryant, in Sutton. In any of these cases where you have a court that is estimating loss amount because the scheme literally is one thing in which all investors are essentially fungible, all victims are essentially fungible. They're all suffering essentially the same loss in the same way. And you can multiply the number of investors by the average loss and come out with a number. That's not what happened here. You have, again, you have allegations that he lied about where the business was, you know, which is not even a fraud under regent office supply. In fact, the Ninth Circuit just a few weeks ago reached the exact same conclusion in a published opinion, obviously just a few weeks ago. So I don't have it in the brief. But the name of the case is Millhiser, M-I-L-H-E-I-S-E-R. It was an April 9th opinion. It doesn't have a Fed Fourth citation yet, but the Lexis citation is 2024 U.S. Appellate Lexis 8488. And the Ninth Circuit adopts this court's reasoning in regent office supply, holding that unless the misrepresentation is clearly going to the nature of the good or services being offered, it does not establish a fraud. And that's, again, what this— Well, Judge Preska found that at least four of these investment vehicles were completely fraudulent, right? Well, she— Not all the others. There are others that she found were not or that the government hadn't proved were. But that's what distinguished it from Stanley. Every dollar that went into the four was deemed by Judge Preska to be proceeds of a fraud. But—well, first of all, yes, this was found by Judge Preska. Although, again, one thing I didn't maybe note well enough in the brief, but she's just reading from the government's May 26, 2022 memorandum. If you look at—I mean, it's literally verbatim from pages 23 to 25, which is document number 107 in the record. This memorandum was filed eight months prior to the sentencing hearing. In that eight months, there was all this additional evidence that had been offered, including the Renaissance Associates flow of funds analysis, which was not before the government or anyone eight months earlier when this part that Judge Preska is just reading verbatim was done. And every case says you need to look at the available evidence in determining what the law is not. Bryan says that. Carboni says that. Binday says that. It's actually even in the guidelines itself. You need to look at all the available information. And here's eight months of available information that's not going into that analysis at all. So we're asking at least that my client should have the opportunity to put the available information. Some of that information was already put there. But other evidence was not put there. And my client is simply asking for the opportunity to have that record made. And again, the probation clearly says he's accepted responsibility. And even the government has as of—nothing substantially has changed in terms of what my client is claiming about how much he's denying or not. In my client's original sentencing memorandum in May of 2022, this is document number 100, Mr. Marvini, his original attorney, says that the loss amount should be approximately $2 million. And the government, when it files its memorandum two weeks later, at that point does not contest that acceptance of responsibility is applicable. It's only later. It's only because—I mean, well, I don't want to cast dispersions on the motives for what my friends for the government have done. But the point is that there's nothing in the record to justify the change in the government's position when they— With respect to loss amount or with respect to acceptance? Acceptance. Do you have questions for me right now? Because I do have two minutes reserved. If I can—so I can speak to other—I know I'm over my time, but I— I'm not sure what you're asking. Oh, I don't want to be just speaking over my time. If you are rushing to cut me off, I obviously do have other things I can talk about, including all of point four, which I haven't addressed. Are you saying you want to make sure you keep your reserved time for rebuttal? Well, more than anything, I want to be able to address the issues that the court might have in terms of—I want to help you help my client. We're not shy. We'll ask questions. You do have two minutes for rebuttal. Well, if you're not cutting me off just yet, though, I would like to be able to address point four, which is just this sort of miscellany, because we were talking a little bit about the government's motives. There's a minimum of $55,000 error in the forfeiture, which the government even concedes and yet argue to the district court, don't correct this $55,000 forfeiture because my client has raised various other objections. And I've never seen a situation where the government concedes that it's not entitled to the forfeiture order and yet nevertheless tells the district court not to— Well, they're conceding it now, it seems to me. No, well, they conceded it at the—if you look, it's right— Well, we'll hear from them. Maybe that makes more sense to have the government speak for itself and then you can respond to that. Okay. Thank you, Your Honor. Thank you. Ms. Kostopoulos, am I saying that right? Yes, Your Honor. Good morning. Good morning. Good morning, and may it please the Court. Georgia Kostopoulos for the United States. Apart from a $50,000 amendment to the forfeiture amount, Judge Preska's sentence should otherwise be affirmed. The method that the— That it should be amended by us or we should remand it for a revised forfeiture? That it should be—that an amended judgment should be entered on remand, and that's the only change that should be made to the judgment. And I think this is a good place to pick up where defense counsel left off, which is this was an error that was detected when the case was originally before the district court. The government submitted paperwork indicating that that amended judgment could be entered at that point, but then the defendant filed a notice of appeal. And based on discussions with defense counsel, it became apparent that there was potentially an issue where the district court had been divested of jurisdiction at that juncture to actually enter the amended judgment. And that was an objection that came primarily from defense counsel. There was discussions on the record about this exact issue. But apart from that one error in the judgment, the double counting of one investor victim's payments to the defendant in connection with the fact that she'd gotten married and changed her last name, and so her payments had been counted twice, there was no other issue with Judge Preska's sentencing, no other issue with the calculation of the forfeiture amount, and the appellant has not demonstrated that there's any other basis under clear error or abusive discretion to change or disturb the lower court's findings. I think maybe the next place to go, Your Honors, is where the appellant began, which is this acceptance of responsibility point. It's precisely right that originally both probation and the government did not oppose the application of the acceptance of responsibility credit or reduction in connection with the defendant's sentence. But between the point at which the defendant pled guilty and the point at which he was sentenced, a whole host of additional events occurred. And I think... The point at which he pled guilty or the point at which the pre-sentence report was issued? I mean, it seems to me that's where probation agreed to the acceptance points. That's correct, Your Honor. Probation ultimately, even after sort of the events that transpired between the defendant pleading guilty and the probation report being entered, still maintained the position that the acceptance of responsibility credit was appropriate. I'm just trying to figure out what you think is the starting point for conduct that changed. So is it post-guilty plea or is it post-PSR? I think it's post-guilty plea, Your Honor. And I think in terms of the standard, there's really two critical takeaways. One, that the decision by Judge Preska had to be without foundation. And two, that the defendant had to either truthfully admit or not falsely deny any additional conduct that he's accountable for. Frankly, we can go directly to the defendant's allocution. I think that lays bare precisely why Judge Preska determined that the acceptance of responsibility adjustment was not appropriate. Okay, but presumably you were aware of what the allocution was at a time when you thought he had met the requirements for acceptance. That's true, Your Honor, but if it were just the allocution. So something must have been after that, it seems to me, where the problem arose. So what's the problem? I think there's a couple of things. But putting aside, let's say, putting aside what he says in the allocution, he says he pleads guilty to sending a victim a falsified bank statement for a bank account that had a negative balance when, in fact, he claims that it has over $7 million, a venture capital fund with no capital. Then, in his submissions to the court, he claims that that was an entirely legitimate venture. Those submissions are made after his guilty plea. Those submissions are made after the entrance of the probation report's recommendation about the adjustments of responsibility. All of that demonstrates that the defendant did not, in fact, fully and forthcomingly accept responsibility for the scope of the fraud that he was responsible for. That fund, that entity, Your Honors, realized funds was the basis for his allocution, and then he proceeded to spend the next few months, as the sentencing was adjourned and adjourned again, trying to undo what he had allocated to as well as to deny counterfeit documents, forged documents, and lies that he had repeated to a number of investors. For him to say— What do you mean, deny counterfeit documents? What do you mean? Meaning that he would claim that these were entirely legitimate business enterprises, even when at the same time he was sending around, for example, brochures claiming to own real estate that he didn't own, claiming that they were investing in building and breaking ground on new construction that didn't exist. That's precisely why Judge Preska concluded that he had not met the requirements of the acceptance of responsibility credit. It was a series of actions that he took in the aftermath of pleading guilty. And at what point did the government agree, I guess, with Judge Preska? Because that's one of the points that Mr. Nutter is making, is that even you folks agree they met the requirements for acceptance, and this was the judge running amok. So when did it change for the government? My understanding, Your Honor, just based on my review of the record, is that it was close in time to the sentencing. And so it was when there started to be this dispute in litigation about whether or not a FATICO hearing was appropriate and what factual findings were going to be required in order for the judge to calculate the loss amount, that the government took the position that the defendant was essentially walking back, even that very narrow allocution that he had provided, in addition to making a number of frivolous arguments about why the fraud that he engaged in was not systematic and pervasive and thorough and did not infect the seven years in which he owned these different entities and repeatedly lied to investors and stole money from them. Because while I recognize that the record itself is lengthy and complicated here, the fraud that the defendant was alleged to have committed and pled guilty to is not. He claimed he owned certain assets, he claimed he owned certain real estate properties, and he didn't. And then he invited investors to participate in those investments, knowing full well that he didn't own a single piece of real estate that he was advertising in these glossy brochures that he was paying for. And that's precisely why Judge Preska found that he had not met the requirements of acceptance of responsibility. And it also goes to the question of forfeiture and the reasonableness of Judge Preska's sentence here. What ultimately was concluded in the lower court was that he told lies to steal money from victims. And the government offered and the defense offered numerous exhibits to the court to make this point plain. When Judge Preska reached her factual findings, when she denied the defendant's request for a hearing, it's not that she just adopted wholesale what probation had written in the PSR. It's not that she adopted wholesale what the government's position was. At sentencing, she in fact cited to and referenced exhibits that were provided by the defendant in his briefings, both for his supplemental submissions for sentencing as well as in his request for a fatical hearing. OK. Well, I mean, Mr. Lutter has suggested that the judge just read what was provided to her without any sort of independent analysis. That's not correct, Your Honor. And I think there's two sort of examples from the record that make that plain. The first is at docket 165, appendix 114, when Judge Preska denied the defendant's request for a hearing, she said, a hearing is not required to adjudicate the defendant's objections. She didn't say that she was adopting the government's position or probation's position wholesale. She said, I don't need to hear live testimony from witnesses. I don't need to compel the government to produce 3500 material for us to evaluate whether or not the scope of the defendant's fraud is what's set forth in the government's position and what's set forth in the government's position and what was set forth in the exhibits that were provided. And that decision was well within the district court's discretion to decide whether she needed to make any credibility assessments, which she didn't, and to make the factual findings that the district court needed to make. And for all those reasons, Your Honors, we would ask that the judgment be affirmed other than the amendment of the $55,000 amount to correct the forfeiture provision. Thank you. Thank you. Mr. Nutter, you've got two minutes to rebut. Thank you, Judge Sullivan. I want to start with one of the last things the government just said in your question about whether the district court has considered what my client put forth. And the government cited to a sentence in the denial of the Fatico hearing. But what we're really talking about are the findings about loss amount, the findings that everything was pervaded by fraud and that nothing was legitimate. And this isn't really a question of opinion. Pages 157 through 159 of the appendix are what Judge Prescott is saying. Pages 23 through 25 of the government's memorandum, which is document number 107 on the docket, you can look at them side by side and they are identical other than the absence of reading the footnotes into it. But they are the same. This isn't something about which there's a reasonable dispute. The district court was not considering the new information, some of which it provided just a week prior to the sentencing. She was reading from a memorandum that the government had written eight months prior. I mean, if it turns out that the assets alleged or advertised as being held by certain of these ventures is false, then why isn't the entire investment a fraud? The government has misrepresented what the evidence and the allocution is regarding realize. What the realize allocution involved was that at one point my client reached out to solicit funds. He claimed that there was about a million dollar balance. But, in fact, there was a negative balance at that time. But it was not the case that realize always had a negative balance. They raised about half a million dollars throughout some of this. They invested in legitimate companies. And that's why Brad Good, the managing director of realize, comes in and says this was a real investment. We really invested in things. They invested in Genilux, this company that had an IPO that does some kind of biopharmaceutical stuff. They invested in these other companies. And Brad Good sends a letter to the court. He sends two letters to the court, but the second of which is two days before the sentencing. And he says this is a real, we did real business. We had real employees. We had real funds which we dispersed to real companies. And the government is standing up here and saying none of this was real. And that's the basis for denying acceptance of responsibility. But it was real. There was at least a legitimate question of fact that should have been a hearing when Mr. Good is sending a letter to the court saying, oh, this is real and I'm willing to talk about it and provide more information to the court. That's in the appendix. So there is not a basis for denying the acceptance of responsibility points. My client was not walking back the allocution, as the government says. The allocution was at this point, he admits this, he has not walked back at all, that there was not a balance of a million dollars or whatever in the realized account when he represented to this investor that there was. But that doesn't mean that everything about realize was fraudulent. And it's just not what the government is saying with respect to this. Now, the glossy brochures which the government mentioned again in its argument here, those glossy brochures were still there at the time when the PSR was issued. Those glossy brochures were the main part of the government's argument in its May 2022 memorandum when they still agree that my client was entitled to acceptance of responsibility. So the only thing that's changing is that my client has sought to withdraw his plea in the middle, but he didn't seek to withdraw his plea on the basis of a claim of actual innocence. And again, the government itself acknowledges that on page 18 of the red brief. All right. Okay. So I think we get it. There are a number of other issues we didn't get to, but we have your submissions. So we will reserve decision. Thank you both. Thank you very much.